UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL HARDMAN,

                                           Case No. 13-14309

               Plaintiff,

                                           Paul D. Borman

v.                                       United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,

                     Defendant.
_____/

OPINION AND ORDER:
(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17); (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 20); AND (3) AFFIRMING THE COMMISSIONER'S DECISION

      Plaintiff Cheryl Hardman brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") that denied both her application for disability insurance benefits and also her application for supplemental security income pursuant to the Social Security Act (the "Act"). The parties have filed cross-motions for summary judgment. (ECF Nos. 17, 20). Plaintiff also filed a reply. (ECF No. 23).

      For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence and was made pursuant to the proper legal standards. Therefore, the Court will deny the Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's decision.

I. BACKGROUND

A.      Procedural History

        Plaintiff filed her applications for supplemental social security income and disability

insurance benefits in October 2008.  (Tr. 113-28).  Plaintiff claimed disability based on diabetes

mellitus, diabetic retinopathy, degenerative disc disease of the cervical spine, degenerative disc

disease of the lumbar spine, status post laminectomy, hypertension, and obesity.  (Tr. 26).

Plaintiff alleged a disability onset date of December 18, 2008 in both of her applications.  (*Id*.)

These claims were initially denied on March 11, 2011 (Tr. 64-72) and Plaintiff then requested a

hearing (Tr. 75-76).  On January 25, 2012, ALJ Michael R. McGuire held a video hearing during

which Plaintiff appeared and testified.  (Tr. 37-61).  Plaintiff was represented by an attorney at

the hearing and a vocational expert, Julie Bose, also appeared and testified.  (Tr. 59-61).

        On February 14, 2012, ALJ McGuire issued his decision and found Plaintiff was not

disabled because she could perform her past relevant work as a clerk/typist and secretary that

was "semi-skilled to skilled work at the sedentary level with occasional postural activities".  (Tr.

30).  This decision became the Commissioner's final decision when the Appeals Council

declined Plaintiff's request for review on July 8, 2013.  (Tr.  5-10).  Plaintiff then filed the

present action with this Court on October 10, 2013.  (ECF No. 1, Compl.).

B.      Medical History

        Plaintiff was age 53 years-old at the time of the January 2012 hearing before the ALJ.

(Tr. 39-40).  Plaintiff previously underwent a lumbar laminectomy in 1996 due to a diagnosis of

herniated disc and rupture at L4-L5.  (Tr. 209).

        1.      Medical Records from 2007 through 2008

2

Prior to her alleged disability onset date of December 18, 2008, Plaintiff treated with Dr. Indira Reddy, MD, at Metro Family Physicians for uncontrolled diabetes mellitus type II, hypertension and back pain. (Tr. 197-246). On February 23, 2007, Plaintiff complained of tingling in her fingers and numbness in her right arm. (Tr. 196-97). An x-ray of Plaintiff's cervical spine was taken on March 10, 2007 that showed "mild degenerative changes within the cervical spine with some mild narrowing of the disc space at C4–C5 and C5-C6 with some anterior spondylitic change at C5-C6" and also noted "[d]ecrease in flexion and extension could be associated with myositis". (Tr. 202, 244).

On January 9, 2008, Plaintiff presented to Dr. Reddy for a check of her blood sugar and represented that she felt "great". (Tr. 240). On May 2, 2008, the medical notes listed diabetes mellitus, hypertension, low back pain, sciatica, lumbar disc disease radiating to her right leg and noted that Plaintiff felt her back pain was "getting worse" and that she felt like her hips were "giv[ing] out". (Tr. 237-38). An x-ray of Plaintiff's bilateral hips were taken on May 2, 2008, and the medical note stated that the "joint spaces are well maintained. There is no fracture or neoplastic change" the impression is "normal hips". (Tr. 249). An x-ray of Plaintiff's pelvis was taken on May 28, 2008 and the medical notes provided that there was no "pelvic fracture or unusual calcification" and that the radiologist's impression is that the "pelvis is normal". (Tr. 247). A lumbar MRI was then taken on May 20, 2008 which showed "L4-5 protruding disc effacing the central canal and encroaching onto both right and left neural foramina" and scar formation in addition to "mildly protruding disc, effacing the central canal" at L5-S1, and noting that there were "hypertrophic facet joint spurs encroaching onto both neural foramina with bilateral foraminal stenosis". (Tr. 246).

3

2.     Medical Records for 2009

Then in early 2009 (post alleged onset date of disability), Plaintiff presented to Dr. Reddy for prescription refills and requested stronger pain medication, and the medical notes provided that she suffered from diabetes mellitus type II uncontrolled, low back pain, radiculopathy, and that she was suffering from blurry vision. (Tr. 231-32). Plaintiff also noted that she fell at least twice in the snow and those falls exacerbated previous back pain. (*Id*.). Plaintiff represented that she had not checked her blood sugar in months. (*Id*.).

On July 13, 2009, Plaintiff was examined by Dr. Yung Seo, MD, a state consultive examiner who reported a majority of normal or negative clinical findings. (Tr. 203-07). Dr. Seo noted that there were "no radicular symptoms or signs noted", Plaintiff demonstrated a normal gait and was able to do heel/toe walking without difficulty. (Tr. 204). Dr. Seo set forth in his assessment that the examination yielded "no significantly limited range of motion in the lumbosacral spine with full range of motion involving the cervical spine." (*Id*.). Therefore, Dr. Seo found that in his opinion "there is no functional restrictions or limitations for this claimant." (Tr. 205).

Approximately one month later, on August 5, 2009, Plaintiff was examined by Dr. A. Sadiq, M.D., another state hired consultive examiner. (Tr. 209-215). Dr. Sadiq reported similarly to Dr. Seo that Plaintiff had full strength, her deep tendon reflexes were intact, no pathological reflexes, and her sensory and coordination examinations were intact. (Tr. 210). Dr. Sadiq noted, however, that she had nonspecific muscle tenderness, impaired "lumbo-pelvic rhythm" and "post laminectomy syndrome". (Tr. 210). Dr. Sadiq also observed that Plaintiff could "ambulate with no deviations", bend, stoop, carry, push, pull, and stand. (Tr. 210, 213).

4

Plaintiff was also restricted from lifting greater than 10 to 15 pounds from December 18, 2008 through September 2, 2009 due to "exacerbation of lumbar disc disease [] sciatic [from] fall". (Tr. 223).

3.      Medical Records for 2010 through 2011

On December 9, 2009, Plaintiff started treating with Dr. Pamela Williams, a family practitioner, at Metro Family Physicians. (Tr. 274-306, 327-40, 347-57). Plaintiff saw Dr. Williams on an almost monthly basis through the end of 2011 and was treated for her uncontrolled diabetes mellitus type 2, hypertension, and pain in her back, neck, and extremities. (*Id*.).

Despite Plaintiff's almost monthly visits to Dr. Williams, Plaintiff's medical notes set forth scant objective findings or physical examinations relating to her musculoskeletal or neurologic impairments.[1] On December 9, 2009 Plaintiff presented with her chief complaint being back pain and Dr. Williams noted diabetes mellitus, hypertension, in addition to low back pain. (Tr. 279). Dr. Williams performed a physical examination and found that Plaintiff had "normal range of motion, normal strength, no tenderness" and that she had no numbness or tingling. (Tr. 279-80). Additionally, it was noted that Plaintiff had normal neurologic findings including "normal sensory, normal motor function, no focal defects". (Tr. 281).

In March 2010, Plaintiff reported that she was having problems sleeping and that her pain

---

[1] Indeed, it appears the only time Dr. Williams made any notes regarding a physical examination related to her musculoskeletal or neurologic function was her first visit with Dr. Williams on December 9, 2009. (Tr. 279-81). Other medical notes set forth Plaintiff's subjective complaints regarding symptoms such as back pain, leg pain and at times tingling or numbness in her hands and one instance of decreased sensation in her feet in January 2011, but no other medical note relays any clinical findings related to her complaints of back, leg or neck pain.

medication made her sleepy during the day.  (Tr. 276).  There is no indication that her medication was adjusted at that time.  Her medical notes also indicate that edema was observed in her ankles on three occasions.  (Tr. 290, 292, 297).  On at least three occasions in 2010 Plaintiff indicated that she was "doing well".  (Tr. 274, 286, 292).

In regards to back pain, Plaintiff complained of back pain in March 2010 (Tr. 276) and again in July 2010 (Tr. 289), but in August 2010 medical notes provide that Plaintiff was only having occasional flare ups (Tr. 292).  In December 2010, Plaintiff complained that her legs had been more bothersome because of the cold weather.  (Tr. 304).

Dr. Williams continued to treat Plaintiff for diabetes mellitus type II, low back pain, obesity, and hypertension and edema in 2011.  (Tr. 327-341, 348-357).  In January 2011, Dr. Williams noted that Plaintiff's feet had diminished sensation to light touch, that her medication was making her sleepy, and that pain in her left leg was keeping her up at night.  (Tr. 339-40).

On February 22 2011, Plaintiff was examined by a third state consultive examiner, Dr. Bina Shaw, MD.  (Tr. 308-315).  Dr. Shaw reported generally normal clinical findings, specifically that Plaintiff had full range of motion of the C-spine, no spasms of the muscles when palpitated, steady gait, and full range of motion at the bilateral hips, knees and ankles.  (Tr. 309).  Dr. Shaw also noted that Plaintiff's "muscle power is 5/5 in all extremities" and that she could "get off the table and chair without any assistance."  (*Id.*).  Dr. Shaw opined that "[b]ased on today's exam, the patient can work eight hours a day.  The patient can sit, stand, walk, bend minimally and lift at least 10 pounds of weight without difficulty."  (Tr. 309-10).  Finally, Dr. Shaw noted that Plaintiff suffered from hypertension, diabetes, "possible mild peripheral neuropathy from diabetes", post lumbar laminectomy with mild residual lumbar pain, and

chronic disc disease.  (Tr. 310).

During Plaintiff's April and May 2011 check ups with Dr. Williams Plaintiff did not report any complaints of back, neck or leg pain.  (Tr. 330-33, 335-38).  On June 30, 2011, Dr. Williams completed a "Physical Residual Functional Capacity Questionnaire" for Plaintiff.  (Tr. 343-346).  Therein, Dr. Williams noted that she had treated Plaintiff monthly since December 2009, and that Plaintiff suffered from hypertension, "lumbar radiculopathy" and "diabetic neuropathy".  (Tr. 343).  Dr. Williams set forth that Plaintiff suffered from "back pain, leg pain, insomnic [sic], fatigue" and but listed only the "diminished light touch of feet" for the clinical findings and objective signs supporting these diagnoses.  (Tr. 343).  Dr. Williams opined that Plaintiff could lift less than 10 pounds and sit and stand/walk for approximately two hours total in a work day, needed to walk every sixty minutes, that she would need to take one or two unscheduled five minute breaks in a work day, that she could never twist, stoop, crouch or squat, and that Plaintiff would need to be absent from work three days per month.  (Tr. 343-46).  Dr. Williams did indicate however, that Plaintiff did not need to elevate her legs and she did not have any significant limitations with reaching, handling, or fingering.  (Tr. 345-46).

From August until November 2011, Dr. Williams continued to treat Plaintiff for diabetes mellitus, hypertension, low back pain, obesity and allergies.  (Tr. 348-358).  In August, 2011 Plaintiff complained of tingling in her fingers and reported back pain at "10/10", however, the medical notes also indicate Plaintiff was in "no acute distress".  (Tr. 355-56).  In September 2011, Plaintiff complained that she had occasional tingling in her fingers, and complained the cooler weather was making her feel more "achy".  (Tr. 352).

During 2010 and 2011, Plaintiff also received four eye exams related to her diagnosis of

diabetic retinopathy at the Optometric Institute and Clinic of Detroit. (Tr. 316-325). Plaintiff's visual acuity was found to be 20/30 and 20/40. (*Id*.). In November 2011, Plaintiff received a CT scan because of her vision changes which showed a chronic cortical infarct in the medial right occipital lobe, associated mild ex-vacuo dilatation of the occipital horn of the right lateral ventricle, minimal chronic-appearing inflammatory change within a posterior left ethmoid air cell. (Tr. 359).

C.      Plaintiff's Testimony

At the hearing, Plaintiff testified that she was 53 years-old and a high school graduate. (Tr. 39). Plaintiff was six feet tall with a weight that generally fluctuated between 226 and 230 pounds. (Tr. 40). Plaintiff testified that she lived in a house with her adult son and her twelve year-old granddaughter. (Tr. 52). Plaintiff previously worked as an executive secretary doing clerical work at Comerica Bank. (Tr. 40). Plaintiff also explained that when she did work she did not lift things because her employer was aware of her back problem. (*Id*.). Plaintiff alleged she became disabled in December 2008 and stopped working. (Tr. 41, 51-52). Plaintiff explained that although her condition had not changed at that time, she attempted to go back to work in September 2009 because she needed the money. (Tr. 52).

Plaintiff also testified that since her earlier back surgery she had been treated for uncontrolled diabetes, eye problems, and back, neck and extremity pain. (Tr. 41-51). Plaintiff noted that her lack of insurance and financial problems have kept her from seeing an endocrinologist or getting new glasses. (Tr. 43, 46).

Plaintiff testified that she has constant pain in her back that radiated to her leg which averaged a six or seven on a scale of ten for pain. (Tr. 47-50). Plaintiff stated that she is only

8

able to stand for five minutes at a time and sit for 15.  (Tr. 47-48).  Plaintiff also explained that

she has constant neck pain that is not affected by any activity and rates a "9 or 10".  (Tr. 49).

Plaintiff takes Motrin, an ointment, Lyrica, as well as muscle relaxers for her back and neck

pain.  (Tr. 50-51).  Plaintiff explained that during the day she spent her time alternating between

sitting, standing, and walking and when she was seated she would prop both her feet up on a

stool.  (Tr. 53, 56).  Plaintiff also testified that she had numbness in her right hand that caused

her to have problems writing and also caused her to drop objects.  (Tr. 55).

Plaintiff testified that she drives and that she goes grocery shopping but her role shopping

is mainly to give directions and hold on to the cart.  (Tr. 53-54).  Plaintiff also explained that she

could wash dishes but could not sweep, mop or vacuum.  (*Id.*).  Plaintiff testified that her muscle

relaxers made her sleepy and she "nodded off" throughout much of the day.  (Tr. 54).  She also

testified that she watched television, read books and occasionally her friends would visit.  (*Id.*).

D.     Vocational Expert Testimony

The Vocational Expert ("VE") testified that Plaintiff's previous relevant work was

consistent with a clerk, typist, and is considered sedentary as performed and recognized as semi-

skilled in nature while her work as an executive secretary or administrative secretary is skilled in

nature.  (Tr. 59).  The ALJ then posed a hypothetical to the VE and asked her to consider

whether a person of Plaintiff's age, education, vocational background with the restrictions that

she could only lift or carry ten pounds, stand or walk for two hours in an eight hour day, sit for

six hours, push or pull ten pounds, and engage in occasional postural activities could perform

Plaintiff's past work.  The VE testified that such a person could perform Plaintiff's past work.

(Tr. 59-60).  However, the VE testified that if the individual was limited to unskilled work

because of the effects of pain and medications, that person could not perform the Plaintiff's past work.  (Tr. 60).  Further, if such an individual was off task 20% of the day it would rule out Plaintiff's "past work and work all together."  (*Id.*).

## II. STANDARD OF REVIEW AND LEGAL FRAMEWORK

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Act and therefore entitled to benefits."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing  42 U.S.C. § 405(h)).  This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  However, the Court's review under this statute is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ... "); *Cutlip v. Sec't of Health and Human Servs.*, 25 F.3d 284, 286 (1994) ("Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (recognizing that substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted).  "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision,

10

'even if there is substantial evidence in the record that would have supported an opposite

conclusion.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v.*

*Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor

decide questions of credibility."  *Cutlip*, 25 F.3d at 286.  Indeed, "[i]t is of course for the ALJ,

and not the reviewing court, to evaluate the credibility of witnesses, including that of the

claimant."  *Rogers*, 486 F.3d at 247; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th

Cir. 2007) (providing that the "ALJ's credibility determinations about the claimant are to be

given great weight, 'particularly since the ALJ is charged with observing the claimant's

demeanor and credibility.") (citation omitted)).

Under the Act, Disability Insurance Benefits (for those qualifying wage earners who

become disabled prior to the expiration of their insured status) and Supplemental Security

Income "are available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475 F.3d

727, 730 (6th Cir. 2007).  "[D]isability" is defined in the Act, as the: "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of

11

impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994).

A.    ALJ's Application of Legal Framework

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013 and had not engaged in substantial gainful activity since December 18, 2008 (the alleged onset date). (Tr. 26). At step two, he found that Plaintiff had the following severe impairments: "diabetes mellitus, diabetic retinopathy, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, status post laminectomy, hypertension, and obesity". (*Id*.).

Then, the ALJ noted that while the medical evidence established diabetes mellitus and diabetic retinopathy, the record was "devoid of evidence of neuropathy in two extremities,

12

acidosis or retinitis proliferans." (Tr. 27). Then, the ALJ found that while there was medical evidence of degenerative disc disease of the cervical and lumbar spine status post laminectomy the evidence did not satisfy the requisite criteria because the record was "devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis with accompanying ineffective ambulation." (*Id.*). The ALJ also found that Plaintiff's hypertension was controlled with medication and therefore did not "meet listing level severity". (*Id.*). Finally, the ALJ set forth that he had considered Plaintiff's obesity and concluded that "there is substantial evidence that the claimant, as an individual with obesity, experiences greater pain and functional limitation that might be expected from his [sic] medically determinable impairments individually." (*Id.*). Given these conclusions, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 26-27).

Because the ALJ determined that Plaintiff did not have a listed impairment, he went on to ascertain her residual functional capacity. At steps four and five of the analysis, the ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work including her past relevant work "except that the claimant is only able to perform postural activities on occasion." (*Id.* at 27-30). Sedentary work is defined in the regulations as:

> lifting no more than 10 pounds at a time and occasion lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R §§ 404.1567(a), 416.967(a).

Based on Plaintiff's medical records, her testimony, as well as the testimony of the VE,

13

the ALJ found that while Plaintiff had some "physical limitations due to her impairments" she was not precluded from performing basic work activities at the sedentary level.  (Tr. 30).  Indeed, the ALJ found that Plaintiff could perform her past relevant work as it is actually and generally performed.  (*Id.*).  Accordingly, the ALJ concluded that because she retained the residual functional capacity to perform the requirements of her past relevant work as a clerk/typist and executive secretary she was "not disabled" and not entitled to disability insurance benefits under the Act.  (Tr. 27-31).

## III. ANALYSIS

A.     Opinion Evidence

Plaintiff first argues that the ALJ erred when he failed to give controlling weight to Dr. Pamela William's opinion regarding her residual functional capacity.  The Court notes that an opinion of a limitation or disability given by a treating source is entitled to deference and "[i]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, it must be given controlling weight."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotation marks omitted) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  The regulations provide that an ALJ will give controlling weight to a treating source's opinion under the treating-physician rule only if it is both well supported by medically acceptable data and it is consistent with other substantial evidence.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R. § 404.1527(c)(2).

However, when an ALJ determines that a treating physician's opinion is not entitled to

14

"controlling weight" the inquiry does not stop. "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing SSR 96-2p (1996), 1996 WL 374188, at *4). "[T]he Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2), now located at §404.1527(c)(2)). When controlling weight is not accorded to a treating-source opinion, "then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of speciality and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence". *Gayheart*, 710 F.3d at 376 (internal citations omitted). Further, those "good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p (1996), 1996 WL 374188, at *5); *see also Gayheart*, 710 F.3d at 376 (citing same). However, an ALJ need not set forth an exhaustive "factor-by-factor" analysis as long as the ALJ gives "good reasons" for the weight assigned to the treating source's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011).

As set forth *supra*, Dr. Williams opined on Plaintiff's residual functional capacity in June 2011 and found that she could lift less than 10 pounds, she could only sit, stand/walk for approximately two hours total in an eight hour work day, she needed unscheduled breaks, and she could never stoop, twist, bend, crouch. (Tr. 343-46). However, Dr. Williams found that

15

Plaintiff did not have any limitations with reaching, fingering or handling and she did not need to elevate her legs.  (*Id.*).  Plaintiff asserts that the ALJ erred when he afforded Dr. Williams' opinion regarding Plaintiff's residual functional capacity "no weight" when he provided that: "Dr. Williams's opinion is less persuasive, as it is not entirely supported by her treatment notes or clinical findings."  (Tr. 30, Pl.'s Mot. at 9-16).  Plaintiff claims that the ALJ employed the wrong standard in evaluating Dr. Williams' opinion because he used the phrase "not entirely supported" rather than the phrase "well supported".  *See* SSR 96-2p (1996), 1996 WL 374188, *2-3 (using the term "well-supported"); 20 C.F.R. § 404.1527(c)(2).  Plaintiff also claims that the ALJ erred by not setting forth "good reasons" to reject Dr. Williams' opinion.

First, the Court finds that the ALJ's use of phrase "not entirely supported" rather than the term of art "well supported" does not indicate the ALJ applied the wrong standard in evaluating a treating physician's opinion under the regulations.  Indeed, the Court observes that the ALJ did not reject Dr. Williams' opinion but rather, as the ALJ set forth, found the opinion "less persuasive" because it was based on short clinical findings.  (Tr. 30).  Further, the ALJ acknowledged the correct statutory regulations as well as the corresponding and applicable Social Security Rulings in his decision.  (Tr. 27).

Next, the Court recognizes that an ALJ is not obligated to give weight to a treating physician's opinion when his or her treatment notes do not support such severe limitations. *Essary v. Comm'r of Soc. Sec*., 114 F. App'x 663, 666-67 (6th Cir. 2004).  The Sixth Circuit has held that an ALJ is not bound by a treating physician's opinion "if there is substantial medical evidence to the contrary" or by a "physician's conclusory opinion that a claimant is unable to work."  *Tate v. Comm'r of Soc. Sec*., 467 F. App'x 431, 433 (6th Cir. 2014).  Indeed,

16

"[c]onclusory statements from physicians are properly discounted by ALJs." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009).

Here, the ALJ properly discounted a conclusory opinion from Dr. Williams that Plaintiff had severe limitations on her residual functional capacity, an opinion that contradicted both Dr. Williams' own notes, Plaintiff's testimony, as well as the opinions of three state hired consultive examiners.  Dr. Williams treated Plaintiff on a monthly basis for approximately two years but her medical notes are almost completely bereft of any clinical findings supporting Plaintiff's back, leg, or neck pain.  Beyond Dr. Williams' first assessment of Plaintiff in December 2009 that found Plaintiff had full range of motion and strength with no tenderness with normal neurologic findings including sensation and motor function (Tr. 280-81), the only clinical finding that could relate to Plaintiff's reported back, leg, neck pain or neuropathy was that Plaintiff had decreased sensation in her feet in one instance in January 2011.  (Tr. 340).  This single clinical finding is the only clinical finding set forth by Dr. Williams to support her opinion regarding Plaintiff's residual functional capacity.  (Tr. 309).  The ALJ cites this decided lack of clinical findings as the basis for finding Dr. Williams' opinion less persuasive.  (Tr. 29-30).  The ALJ also specifically noted that while diabetic neuropathy was listed as a condition by Dr. Williams, "her treatment notes did not establish it".  (Tr. 28).  Additionally, the ALJ noted that Dr. Williams' opinion that Plaintiff did not need to elevate her legs was contradicted Plaintiff's testimony.  (Tr. 28).

Dr. Williams' notes also reflect that Plaintiff was feeling well on three different occasions in 2010 (Tr. 274, 286, 292), was only suffering occasional flare ups of back pain in August 2010 (Tr. 292).  Finally, Dr. Williams provides in her residual function capacity

assessment that Plaintiff has no limitations regarding her fingering, handling or reaching which contradicts Plaintiff's testimony and Dr. Williams' own notes stating Plaintiff was suffering from tingling and numbness (neuropathy) in her hands.

Given these facts, the Court finds that the ALJ did not employ a "new" or more rigorous standard when applying the physician's treating rule. Rather, there is a substantial evidence in the record to support the fact that the ALJ found Dr. Williams' opinion less persuasive given its conclusory nature and the fact it was not supported by clinical findings and in conflict with Plaintiff's testimony and Dr. Williams' own notes.

To the extent Plaintiff argues that the ALJ failed to set forth any good reasons to support his assertion that Dr. Williams' opinion was not entitled to controlling weight, the Court rejects this argument. While the ALJ did not exhaustively provide a factor-by-factor analysis regarding his weighing of Dr. Williams' opinion, the Court finds that such an analysis is not needed where the ALJ did determine that Dr. Williams' opinion was inconsistent with the record as a whole, specifically the three opinions of the consultive examiners, as well as her own medical notes and Plaintiff's testimony. *See Francis*, 414 F. App'x at 805. The ALJ clearly stated that he found Dr. Williams' opinion regarding her residual functional capacity was "less persuasive" because her opinion was based on "short clinical findings" while the consultive examiners all performed physical examinations and their reports contained clinical findings that supported a sedentary residual functional capacity. (Tr. 30). The ALJ also acknowledged Plaintiff's long treating relationship with Dr. Williams by relating that Plaintiff had received the "majority" of all of her medical care from Dr. Williams. (Tr. 28).

Further, as stated *supra*, Plaintiff's testimony regarding her hand numbness and need for

18

feet elevation are contradicted by Dr. Williams' opinion.  Additionally, Dr. Williams found that one year after the alleged onset of her disability, Plaintiff had full range of motion, strength and normal neurologic function.  (Tr. 280-81).  Finally, Plaintiff herself does not cite to any clinical findings, outside of one instance of decreased sensation of light touch in her feet and intermittent edema, in Dr. Williams' treatment notes that could *support* Dr. Williams' opinion that Plaintiff had such severe functional limitations.   Given these facts, the Court finds that the ALJ's treatment of Dr. Williams' opinion was proper and supported by substantial evidence.

Plaintiff also appears to argue that the ALJ failed to properly weigh the opinions of the state hired consulting physicians because he did not weigh these opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability".  (Pl.'s Mot. at 15).  The ALJ examined each of the three state hired examiner's opinions in his decision and stated that he gave weight to the most recent evaluation by Dr. Bina Shaw in February 2011 "to the extent it is consistent with the other medical evidence of record".  (Tr. 29).  The ALJ also acknowledged that these opinions were authored by state hired examiners.  (Tr. 28-30).  Further, in weighing the opinions of the state hired examiners and Dr. Williams' opinion the ALJ noted that Dr. Williams' opinion was not supported by many clinical findings (actually just one) and recommended a less than sedentary residual functional capacity, while all three state hired examiners who performed physical examinations and provided clinical findings concluded that Plaintiff had a sedentary functional capacity.  (Tr. 30).

The Court finds that the ALJ's treatment of the consultive examiners' opinions was proper where he found the three opinions were consistent in their findings that Plaintiff could perform sedentary work, supported by objective clinical evidence, and all involved a physical

19

examination.  The ALJ also gave weight to the most recent consultive exam over the older

exams.  Additionally, the Sixth Circuit has held that "[a]n administrative law judge may give

more weight to the opinions of examining or consultative sources where the treating physician's

opinion is not well-supported by the objective medical records."  *Dyer v. Soc. Sec. Admin*., 568

F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart*, 710 F.3d at 379-80).   Here, where the ALJ

determined that the treating physician's opinion was not supported by objective medical

evidence, it was proper to give weight to the most recent state hired consultative physician's

opinion where it was consistent with the medical evidence, set forth clinical findings and was

consistent with opinions of two other state hired consultative examiners.

Finally, Plaintiff appears to argue that the state hired consultative examiners' opinions

should be less persuasive than Dr. Williams' opinion because "[n]one specialize in Plaintiff's

conditions".  This argument lacks merit as it is devoid of any legal authority.  Additionally, the

Plaintiff fails to explain why Dr. Williams, a family practitioner, would be more qualified to

assess Plaintiff's functional limitations than an internist (Dr. Shaw); a physiatrist (Dr. Seo); or a

doctor of physical medicine (Dr. Sadiq).

For all these reasons, the Court finds that the ALJ did not err in evaluating the opinion of

Dr. Williams' regarding Plaintiff's residual functional capacity.

B.    Credibility Assessment

Plaintiff next argues that the ALJ issued a "flawed credibility assessment."  It is well

settled that it is the in the province of the ALJ to make credibility assessments, not the Court.

*Siterlet v. Sec'y of Health and Human Serv.*, 823 F.2d 918, 920 (6th Cir. 1987) ("A reviewing

court may not try the case de novo, nor resolve conflicts in the evidence nor decide questions of

20

credibility."); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (harmless error analysis applies to credibility determinations); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (holding "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" (citation omitted)). Therefore, an ALJ's credibility determination will only be disturbed for a "compelling reason". *See Sims v. Comm'r of Soc. Sec.*, 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

In this action, Plaintiff sets forth a litany of reasons the ALJ erred in his credibility assessment, the first being that the ALJ improperly "played doctor" in his treatment of a CT scan and also misstated the record. (Pl.'s Mot. at 16-17). The ALJ provided in his decision that "[a] CT of the claimant's head was also performed due to the claimant's complaints of abnormal vision, which revealed only, minor changes with no evidence of an acute cortical infarct, edema, hemorrhage or mass". (Tr. 28). Plaintiff claims that this recitation of the record constitutes an impermissible instance of the ALJ analyzing raw medical data against Plaintiff's credibility. (Pl.'s Mot. at 17). The CT report at issue was authored by a radiologist and set forth that there was "no evidence of acute cortical infarct, edema, hemorrhage or mass" as well as stating that there was "chronic cortical infarct in the medial right occipital lobe" and "minimal chronic-appearing inflammatory change within a posterior left ethmoid air cell". (Tr. 359). There were no other medical opinions or records explaining or weighing the relevance of the CT scan. Given this record it is obvious that the ALJ merely parroted a portion of the CT report in his decision.

21

The Court finds that this quotation of the record does not constitute an ill advised attempt at "playing doctor" because the ALJ did not draw any medical conclusions regarding Plaintiff's health or her credibility based on the CT scan. In *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009), the Sixth Circuit found an ALJ had erroneously substituted his own medical judgment for that of a doctor when he found that the doctor's opinion was "inconceivable" based on the ALJ's interpretation of the medical evidence. In the present case, however, the ALJ made neither a medical judgment, nor substituted his own judgment for that of a doctor. Rather, the ALJ quoted a portion of the radiologist's findings from the CT scan. Plaintiff also fails to specify how this recitation misrepresented the results of the CT scan or undermined Plaintiff's credibility. Therefore, this argument is without merit.

Plaintiff also argues that the ALJ erred in "ignoring an entire line of medical evidence" by finding that neuropathy was not well established in the record.[2] While Plaintiff claims that the ALJ ignored the opinions of two doctors on this issue, the Court finds the opposite is true. The ALJ explicitly acknowledged in his decision that the state hired consultive examiner Dr. Shaw "noted that the claimant has 'possible' mild peripheral neuropathy from diabetes". (Tr. 28). The ALJ also provided that Dr. Williams listed diabetic neuropathy as a condition but found that "her treatment notes did not establish it". (Tr. 28). The Court reiterates that Dr. Williams found that Plaintiff had no limitations on fingering, handling or reaching and her only

---

[2] "Diabetic neuropathy" is defined as "a type of nerve damage that can occur if you have diabetes ... symptoms of diabetic neuropathy can range from pain and numbness in your extremities to problems with your digestive system, urinary tract, blood vessels and heart." *See* Mayo Clinic, "Diabetic neuropathy", http://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics/definition/con-20033 336 (last visited on February 24, 2015).

physical examination of Plaintiff's muscoloskeletal and neurologic functioning provided normal results. (Tr. 280). Dr. Shaw also noted in her exam that Plaintiff complained of "tingling and numbness in both feet" (and not her hands) however, Plaintiff's medical notes and testimony only refer to numbness and tingling in her hands. (Tr. 54-55, 355, 352). Accordingly, the Court finds that the ALJ did not ignore an "entire line of medical evidence" such that the credibility assessment of Plaintiff was flawed.

Plaintiff next argues that the ALJ erred in finding that there was no evidence to support medication side-effects. The Court notes Dr. Williams' notes do provide that Plaintiff complained of sleepiness, once in 2010 and once in 2011, in addition to complaining that she suffered from problems sleeping. (Tr. 276, 339, 343). Plaintiff also testified that she nodded off throughout the day. (Tr. 54). There is no indication, however, that Plaintiff's medication was adjusted in response or that any doctor counseled her regarding her sleepiness. Further, the ALJ discounted Plaintiff's credibility noting that she was evasive in her answers and that her described daily activities were consistent with sedentary work. (Tr. 28). Therefore, the ALJ had "substantial evidence" on which to base her assessment such that the Court cannot reverse the decision merely because there exists some other evidence that might support a different conclusion. *See McClanahan v. Comm'r of Soc. Sec*., 474 F.3d 830, 833 (6th Cir. 2006) ("'The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion ... This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.'" (citation omitted)).

Plaintiff also argues that the ALJ failed to credit Plaintiff's testimony regarding her daily

23

activities or her prior work record, and failed to factor in Plaintiff's inability to pay for medical care, glasses or medical testing.  The record is clear however that the ALJ did reference her daily activities, including her need for a footstool in his decision.  (Tr. 28).  The ALJ also explicitly acknowledged Plaintiff's long work history.  (Tr. 30).  Therefore, the Court finds Plaintiffs' arguments unpersuasive.

Finally, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain as required by the regulations.  *See* SSR 96-7p, 1996 WL 374186.  These regulations set forth that an ALJ should consider the following factors in assessing a claimant's statements regarding pain: the claimant's daily activities, the location, duration, frequency and intensity of the pain, the type, dosage and side effects of any medication that the claimant takes to alleviate the pain, any treatment, or any other measures the individual uses to relieve pain.  *See* SSR 96-7p, 1996 WL 374186, * 3; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Plaintiff argues that the ALJ failed to give any reasons for discrediting her statements regarding her pain and symptoms and did not "explain how Plaintiff's testimony about her daily activities correlates to sedentary employment", and did not evidence any contradictions to support his credibility assessment.  (Pl.'s Mot. at 23).

After careful review the Court finds that the ALJ did properly evaluate the record pursuant to the regulations.  The ALJ accurately set forth the correct standard and then summarized Plaintiff's testimony noting that her hypertension is controlled and that her fasting blood sugar is usually in the 128-150 range.  (Tr. 27-28).  The ALJ then noted Plaintiff's testimony that her back pain averaged "6-7" and her neck pain averaged "9-10".  (*Id*.).  The ALJ also set forth the medications Plaintiff was taking and that she claimed they caused her to doze

24

off during the day and her need to proper her feet up when she sits.  (*Id*.).  The ALJ also accurately summarized Plaintiff's testimony that she spent her wakeful hours (some 15 of them) alternating between sitting, standing, walking and that she had the ability to lift and carry 10 pounds.  (*Id*.).

In evaluating Plaintiff's statements regarding her symptoms, the ALJ noted that she was "evasive in responding to my questions - either deliberately or, perhaps, due to a medical issue." (Tr. 28).  The ALJ also noted that her testimony regarding her back and neck pain was "vague". (*Id*.).  Additionally, the ALJ noted that Plaintiff's testimony that she needed to prop her foot up on a stool for most of the day was contradicted by the medical record.  (*Id*.).  The ALJ also expressly acknowledged Plaintiff's allegations of pain noting "[w]hile I do recognize that the claimant experiences some physical limitations due to her impairments, I do not find that these limitations totally preclude her from performing basic work activities."  (Tr. 30).  The ALJ further noted that Plaintiff's obesity aggravated both her diabetes mellitus and her low back pain and that her vision had been affected by diabetic retinopathy.  (Tr. 28).  Finally, and most importantly, the ALJ credited Plaintiff's testimony regarding her ability to sit, stand, walk and lift or carry – finding that this testimony was consistent with work at a sedentary level.  (*Id*.).

To the extent Plaintiff argues the ALJ failed to cite evidence to contradict Plaintiff's testimony, this is in part because the ALJ found his assessment to be consistent with Plaintiff's testimony.

In summary, the Court finds that the ALJ had substantial evidence to support his credibility determination and accordingly that assessment cannot be disturbed by this Court. *Cruse*, 502 F.3d at 542.

25

IV. CONCLUSION

For all these reasons, the Court denies Plaintiff's Motion for Summary Judgment (ECF

No. 17), and grants Defendant Commissioner's Motion for Summary Judgment (ECF No. 20).

IT IS SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or
party of record herein by electronic means or first class U.S. mail on February 27, 2015.


s/Deborah Tofil_____
Case Manager